Good morning, Your Honors. May it please the Court. I am Joseph Porta. I represent the petitioner, Reynaldo Mendoza-Ortiz, and I'd like to reserve three minutes for rebuttal. This case is before this Court on three consolidated petitions for review for the same individual. The Court has asked us to discuss the case of Avagian v. Holder, which I'm going to jump to that directly. The case here involves equitable tolling. The Court in Avagian reiterated that equitable tolling is available when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering that deception, fraud, or error. In Avagian, the Court basically stated that there's three issues that they're going to look at. The first issue is whether a reasonable person would suspect fraud or error in the underlying case. Two, whether the person took reasonable steps to investigate or to pursue relief. And three, when tolling should end. In the instant case, the Board of Immigration Appeals basically held that there was a period of 17 days that were at issue, from the point in when the petitioner contacted counsel until 17 days transpired after that, during which a file was requested and reviewed. And then at that point, there was a discussion with the petitioner and counsel as to the merits of pursuing any sort of case. From that discussion, the motion was filed within 90 days. The BIA seems to believe that the motion should have been filed from the moment that the petitioner walked into the attorney's office. I would hold that Avagian holds otherwise. In the Avagian case, which I believe is controlling and on point, in the Avagian case, the Court held applying the facts to the instant case is that a reasonable person in these circumstances may have suspected some sort of fraud or error in the case at several points throughout the hearing. But what distinguishes this case from Avagian is that the person has been pursuing relief at all points in time. As a matter of fact, the first petition for review is before this Court. There was a motion to reopen that was filed immediately thereafter. Here's what I don't get. Sure. In Avagian, the counsel's deficiencies were latent, and the new lawyer couldn't tell what went on until he got the file and looked at it. Correct. Here, counsel's deficiencies are patent. The lawyer shows up at the IJ hearing and confesses that he messed up. The judge balled him out. I mean, all this was in front of God and everybody right there on, what was it, the 20th of April, 20 hearing. I'd like to address that. They're patent in hindsight, and hindsight is always 20-20. Why is it hindsight? It's right there, open and obvious. It's not open and obvious. The lawyer said, this is my office's fault. I was here, my excuses, my kids were sick, my this, my that. He had his reasons, and the judge read him the Riot Act. Why isn't that obvious from the get-go? It's not obvious from the get-go because the petitioner in the instant matter, and according to the declarations and the record, went to inquire with counsel. And what was there was both decisions. There was no oral decision of the immigration judge. There was no transcript. There was no record. He was present when the lawyer confessed his error, and he was present when the judge told the lawyer that he was a knucklehead, basically. Granted, he was there. At that point, the petitioner, in his declaration that was submitted with the court, was told by his attorney that, I quote from page 38 of the administrative record at paragraph 16 of his declaration. It says, After this incident, my former counsel indicated that I should not worry that he would appeal the case and that everything would turn out fine. He was with the same counsel, had received at least some sort of assurances that things would turn out, and he was constantly fighting the case. Okay, but he knew that, too? That's also information he had? That his lawyer told him, you know, I'll take care of it? Well, the issue at the issue at the That wasn't concealed? I mean, you just said the lawyer told him that to his face, I guess. Yes. Now, one other thing that's a strange incident in this case. So let me just go back. So waiting to get the file, as happened in the other case of Ghanian, that wouldn't have been in the file anyway because this is something the lawyer told him. I believe in the incident matter, and in most cases, that when somebody walks into an office of an attorney with some decisions and wants to impugn another counsel, that some sort of diligence needs to take place before you make that assessment. I can't go on a client and say so, and nor do I believe any attorney should go on a client and say so. And, in fact, when these errors were brought to the attorney's attention, he defended them and said that it was ambiguous and he didn't actually agree that he had performed inadequately. And so how would someone who didn't really know the law or know what he was entitled to get from his lawyer have known that this – I mean, sometimes a lawyer can behave improperly and it doesn't rise to the level of ineffective assistance. Correct. And additionally, I would note that in the incident case, the petitioner hired a lawyer on basically the last day to file a petition for review with the Ninth Circuit from the denial of the motion to reopen. It was immediate, but he got advice. So did the lawyer fail to file the petition for review? No, I am that lawyer. I am the second lawyer. I know, but the first lawyer. Did he do anything when he said don't worry about it? He filed – at the conclusion of the first case, basically he was denied in court because of the fingerprints. He files an appeal with the BIA. The BIA denies that appeal. Two things take place. A timely petition for review is filed from that BIA denial, and second, preparations begin on a motion to reopen based on the fact that the petitioner can reseek, quote, unquote, permanent residency through a readjustment. He was pursuing available avenues of relief. Those have all been exhausted. They're all presently before the court, and there hasn't been any lapse like there was in Avagian, which was still found to be reasonable. Another thing as well to answer Judge Silverman's concerns, when the decision comes in, it's pretty difficult to tell what was argued before the Board of Immigration Appeals. All that you see is an empty decision. It appears that counsel, although he did state in court that there was an error between him and his office, that wasn't apparent from the BIA's decision, and it wasn't until the briefs were reviewed that it was apparent that that wasn't argued. All that was argued to the Board was that the immigration judge didn't have authority to set fingerprint deadlines. It didn't reiterate the argument that was in court that, oh, it was a screw-up between some staff member and the petitioner. So what were the papers that the petitioner handed to you initially? What I received were a copy of both decisions. I received a copy. The BIA decisions? The BIA decisions. And then what did you do? You requested the file? I basically wrote a ñ I immediately fax-filed the petition for review at the Ninth Circuit, and then I proceeded to obtain the file from counsel to make heads or tails of it. I felt at that point in time that probably the most important thing to do is preserve the petition for review because that is a statutory deadline, and then let's figure out what comes up with everything once everything gets to my desk. All right. Thank you. Unless there's more questions, I'd like to reserve the remainder of my time. Thank you, Mr. Porter. Good morning, Your Honors. Good morning. May it please the Court, Timothy Hayes on behalf of the Attorney General. The agency did not exceed its discretion in denying Mendoza's untimely filed motion to reopen based on alleged ineffective assistance of counsel. Mr. Mendoza had the vital information necessary to definitively know of attorney wrongdoing when he first met with current counsel. What did he have? In the October ñ What did he have? Excuse me? When he first met with counsel, what did he have? I'm sorry. What did he have? What information did he have? What was the vital information? My reading of the Board's decision is it gave ñ Okay. So you're not going based on the declaration or what ñ you're taking your information from just reading the VIA decision? Well, I was going to say the fingerprinting requirement, they gave him the benefit of the doubt on that. They told the deadline through the requirement. They said they didn't make any findings that he should have known that the fingerprinting issue was at issue earlier. They told it until he met with current counsel based on the adjustment of status denial, which is a motion to reopen denial. And that denial said that the motion was denied because prior counsel did not submit evidence with the motion to reopen. He didn't submit evidence that's necessary by regulation. To me, and from what I read in the Board's decision, is it says that's something that an attorney should know right away there is some ineffective assistance. We might not know the entire scope of it, but there's something wrong. But isn't ñ it's a pretty ñ it's a pretty serious thing to assert ineffective assistance of counsel against a lawyer. And, in fact, under matter of Lizada, you have to report that to the state bar. You have to send a letter to your ñ there's all sorts of requirements. Do you think it's responsible to make that assertion against a member, the bar, based on one line from a VIA decision? I mean, I would think that it's pretty irresponsible to do that without knowing more or seeing the entire file so that you're ñ you can show that you have some basis for your allegation of ineffective assistance of counsel. I mean, you could get someone disbarred by making that charge. I understand the concern, Your Honor. But in this case, there are two issues. One is we're only talking 17 days. You don't have to immediately allege ineffective assistance. You can begin preparing the letter right away within that period. I don't know. I mean, something really troubles me about this argument because the board says that the final date of such tolling would be October 24, the day the respondent hired ñ hired his current counsel. If I were that current counsel, I would not be immediately sending out a letter saying, hey, prior counsel, you were ineffective. That is a very serious charge. I would think as an attorney, a fellow member of the State Bar, I would want to see the file before I made a charge like that. And don't you think ñ I mean, think about it. If someone was making a charge like that against you, wouldn't you want them to at least have looked at the file and have some basis for the charge? You don't want people just sending off letters telling lawyers that they're ineffective. Well, it depends on the charge, Your Honor. I don't know. It's very serious to me. I mean, I agree with you that it is a serious allegation. Anytime anyone alleges ineffective assistance, it is a serious allegation. But in most cases, as yet ñ Do you know who the prior attorney was? Oh, yeah. We have him now. I know who he is. Yes, Your Honor. You do. Okay. Yeah. Is he still ñ He practices before this Court. Is he still ñ He's still licensed. As far as I know, he was never disciplined before EOIR either. The Ogdenian case, that case was a latent case where it dealt with the person getting an affirmative miscommunication from his lawyer that he should have filed his adjustment or should have waited to file his adjustment of status application until after the board ruled on the asylum appeal, which was very wrong and not something that an attorney would know that he was advised until he actually got the file and was able to get a response. That is in this case. The denial of the motion to reopen on its face, that first board decision denying the motion to reopen, gives all the vital information necessary to know that there's something here and we need to start acting. It doesn't mean you have to send out a letter immediately. It means you need to start investigating. Well, and that's what he did, and he actually managed to file something within 17 days. I think that in lawyer time is quite quick. You know, lawyers take reviewing the file and ñ Nothing was ñ Oh, I see what you're saying. He was able to retrieve the file within 17 days. Right. Well, the board held that it wasn't necessary. I will give you, admittedly, that it would be reasonable for the board to have said, 17 days, that's okay, but they didn't say that here. And, you know, so the findings can be reviewed for whether it was arbitrary, irrational, or contrary to law. It isn't an arbitrary finding because this court held in Singh v. Gonzalez, which is a board decision or a court decision the board cited in denying the motion to reopen for ineffective assistance, that they told in that case only until the time the person met with the current counsel and said, you're outside the 90-day window. So it's not arbitrary. I'll give you, in many cases, that is not to be the date, but it's not an arbitrary date. It's not irrational in this case because the denial of the first motion to reopen, on its face, gave the vital information necessary to know you need to start acting. So you had 90 days from that point. And it's not contrary to law because Ogdenian says, in many cases, this will be at the time when counsel receives the file and discusses it with his client. This is one of those cases that's not the usual case. Counsel? I'm sorry. Have you ever been in private practice? No, Your Honor. I see that you have no basic understanding of the pressures on private practitioners who have many things. And here this comes in the door. Do you think he should immediately take this action without having an opportunity to see the file, to investigate? I would think that the government would think about such things and that this would have been found reasonable on the part of the private lawyer who finally this poor individual has someone who knows the law and is willing to help. Well, Your Honor, I agree that it would be rash to immediately send off a letter the minute you get an indication, even on its face, that there was some attorney either non-feasance or malfeasance. I agree with that. What I don't necessarily agree with is the suggestion that you have to immediately act and then we have to give you another 17 days and then told from that 90-day point. You should be able to, in cases like this where it seems pretty plain on the face of the decision, you should be able to get all that done in 90 days from that point. You shouldn't need the extra 17 days. Can I ask you a question slightly different? So the underlying relief that he seeks is the adjustment of status based on his U.S. citizen wife. That's correct, right? There are two forms he's seeking. He's seeking a cancellation or removal for non-primary residence and then an adjustment of status alongside a waiver to waive the crime-involved moratorium. Well, that was my question was could he receive relief having also committed that particular crime? Is it a 245 waiver? It would be an 1182H waiver. Okay. 245 is the adjustment of status statute. Okay. Yeah, yeah, yeah. All right. The court's scope of review is obviously narrow here because the board only really decided the equitable tolling issue. So if the court disagrees with equitable tolling, it would have to go back for a number of reasons, including whether a matter of Rosado was complied with or whether it should be excused here, whether the prior counsel was actually ineffective because they actually assumed it but didn't make a finding. And then we get to the prejudice argument. So you can't tell us for sure right now whether he was actually ineffective? I actually was just discussing this with Mr. Porta, and I didn't 28J it because it's outside of the scope of review. But it's quite possible that his conviction is an aggravated felony. And the reason being is he was convicted for corporal injury to a spouse under 273.5A, which is a crime of violence. It's a categorical crime of violence under 18 U.S.C. 16A. So the question is whether he served a term of imprisonment of one year. This court held in United States v. Jimenez, which was a sentencing case. Jimenez. Oh, excuse me? Jimenez. Oh, I'm sorry. In United States v. Jimenez, a 2001 case, that when someone violates probation, when he was sentenced to summary probation but violates probation, then that counts towards the original crime. So what's the point you're making with that? The point is he actually served 603 days. He was sentenced to. He didn't serve. He was sentenced to 603 days. So you're saying he wouldn't qualify for adjustment in any event? Is that what we're getting? That is my understanding of this court's case law, and there is actually a case on the board that says that. It's called Matter of Perez-Ramirez. It's pending right now before this court. It's a board decision from 2010. So we'll know for sure fairly soon. Are you – I'm not trying to digest what you – what the point of this is, then. Should we – are you saying what, that we should – I was just saying that if the court disagrees and it does go back to the board, this would be something the board would have to address, too. It's not clear-cut that he would be able to even apply. That's not adjustment. And what about cancellation? Basically cancellation, too, because cancellation, you can't be an aggravated felon to receive cancellation. So what are you suggesting? Well, the – Suggesting an informational item. It's an item to say that the board's decision is very narrow. It's an equitable tolling issue. The board didn't abuse its discretion in saying, when you first met with counsel in this case – We know your argument on that, but what's the point of the new argument? The point of the other thing is to say that it's not clear-cut as to what's going to happen if the case goes back. You never know what's going to happen. Right. I mean – We know that for sure. Right. Thanks. Thanks a lot. Thank you, Your Honor. Thank you. Mr. Porta, you get the last word. Thank you. Quickly, to dismiss the informational item, the respondent was charged with a crime of domestic violence. He wasn't charged with an aggravated felony. That issue is not before the court. No, that's not even really on our plate. Let me ask – maybe I should ask – is this a case appropriate for mediation or not? I've requested mediation from the government on more than one occasion, and I was told that it wasn't appropriate. All right. Is that your position? It's not appropriate for the conviction. I don't see how the conviction has anything to do whether my client was denied an effective assistance of counsel or not. What he's saying is, at the end of the day, you can't – and I don't think this is the forum to resolve that. He's saying that when all is said and done, he can't stay here because he's an aggravated felon. Very well. So that's why he says mediation can't work. But the mediation is for the issue that's before the court. Mediation wouldn't get involved in something that hasn't been decided yet. I think we can decide this issue. Yeah. Now, what I want to return to the argument is, in Avagian, the court said that you have to exercise due diligence, not maximum diligence, and I believe the government's argument is faulty. They're requiring maximum diligence. And it appears that they're benefiting somebody that acted slower than the petitioner in the incident case. In Avagian, there was a four-and-a-half-month delay, and the attorney's entitled to look at a file. In this case, the petitioner acted immediately, hires a lawyer, and now the lawyer's being penalized for taking less time than the lawyer did in Avagian to review a file, and that's the sole reason for denial. I do share with – you know, I am the attorney that did file it in 17 days, but I am an attorney in private practice, and when somebody walks in your office, you have 20 people walk into your office all day, they hand you something, you say, great. You nod your head, you look at the file, and you say, okay, I'm going to investigate this and see what happens. It's not at that point that I start pulling my calendar and say, 90 days from today, I saw this person. As a matter of fact, if Avagian's read closely, the petitioner in Avagian consulted with the attorney before then, and then he was hired in December, and then in December, he did it. So maybe under Avagian, it actually helped, because there was multiple conversations with the attorney in Avagian. We're out of time, Mr. Porter. Thank you. Thank you. Thank you. The case just argument is submitted. I just wanted to note that I appreciate having competent counsel on both sides in this case. Yes. Thank you. I agree. Thank you. 10-55721, Derek and Constance Lee Corp. versus Kinsane Company. Each side will have ten minutes.
judges: Fletcher, Silverman, Wardlaw